UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

REGINALD BOWMAN,
on behalf of himself and all others similarly situated,

                                 Plaintiff,

-against-

WELLS FARGO BANK, N.A. and U.S. BANK
NATIONAL ASSOCIATION, as Trustee under
The Trust Agreement for the Structured Asset
Investment Loan Trust, Mortgage Pass Through
Certificates, Series 2005-8,

                                 Defendants.

_____

Civil Action No. 14-cv-0648 (CS)

**MEMORANDUM OF LAW IN
<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ...............................................................................................1

ARGUMENT ....................................................................................................2

I.   Mortgagees Must Comply With § 1921 and § 275
When Mortgages Have Been Satisfied By Means Of An Agreed-Upon Short Sale. ...........2

II.   That The Certificate Of Discharge Was Ultimately Filed (106 Days Late)
Does Not Absolve Defendants Of Their Liability Under § 1921 and § 275. .......................6

III.   Mortgage Satisfaction Laws Are Not Preempted
By The National Banking Act Or OCC Regulations. ...........................................................9

    A.  Because Defendants Did Not Make Mr. Bowman's Loan,
They Cannot Avoid Liability Under 12 C.F.R. § 34.4(a). ..........................................10

    B.  Mortgage Satisfaction Requirements Do Not Implicate
Banks' Servicing And Processing Activities Under § 34.4(a)(10). ............................12

    C.  Because § 1921 And § 275 Are Crucial Mechanisms By Which States
Historically Ensure That Property Can Be Securely And Effectively Acquired
And Transferred, They Are Saved From Preemption By 12 C.F.R. §34.4(b)(6). .......14

    D.  Defendants Cannot Meet Their Burden Of Showing That § 1921
And § 275 Significantly Interfere With Banks' Real Estate Lending Activities. ........16

        1.  Defendants Bear The Burden Of Demonstrating That There Is
An Irreconcilable Conflict Between § 1921 Or § 275 And The NBA .................17

        2.  There Is No Conflict Between § 1921 Or § 275 And The NBA...........................18

IV.  The Amended Complaint Pleads A
Valid Claim For Relief Under § 1921 And § 275................................................................24

V.   RPL § 275 Is Applicable To Wells Fargo...........................................................................25

CONCLUSION................................................................................................................................25

## **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                          <u>Pages</u>

*Abel v. Keybank USA, N.A.*,
   313 F. Supp. 2d 720 (N.D. Ohio 2004) ................................................................. 23

*Agustin v. PNC Fin. Servs. Grp., Inc.*,
   707 F. Supp. 2d 1080 (D. Haw. 2010) ............................................................ 17, 21

*Aguyao v. U.S. Bank*,
   653 F.3d 912 (9th Cir. 2011) ............................................................................. 12, 20

*Alston v. Countrywide Fin. Corp.*,
   585 F.3d 753 (3d Cir. 2009) ......................................................................................... 8

*American Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*,
   704 F. Supp. 2d 177 (E.D.N.Y. 2010) ....................................................................... 4

*Anderson v. Sara Lee Corp.*,
   508 F.3d 181 (4th Cir. 2007) ..................................................................................... 17

*Armstrong v. Collins*,
   Nos. 01-2437, 02-2796, 02-3620, 2010 WL 1141158 (S.D.N.Y. Mar. 24, 2010) ..................... 3

*Bank of New York v. Romero*,
   320 P.3d 1 (N.M. Sup. Ct. 2014) ........................................................................ 17, 20

*Barnett Bank of Marion Cnty., N.A. v. Nelson*,
   517 U.S. 25, 33 (1996) ............................................................................................ 9, 22

*Bellemare v. Wachovia Mortgage Corp.*,
   94 Conn. App. 593 (2006) ......................................................................................... 15

*BFP v. Resolution Trust Corp.*,
   511 U.S. 531 (1994) .................................................................................................... 16

*Cabrera v. Countrywide Home Loans Inc.*,
   No. 11-4869, 2013 WL 1345083 (N.D. Cal. Apr. 2, 2013) ...................................... 19

*Cannon v. Wells Fargo Bank N.A.*,
   917 F. Supp. 2d 1025 (N.D. Cal. 2013) ............................................................. 11, 16

*Cassese v. Washington Mut., Inc.*,
   255 F.R.D. 89 (E.D.N.Y. 2008) ........................................................................... 14, 21

*Cuomo v. Clearing House Ass'n, L.L.C.,*
  557 U.S. 519 (2009) ........................................................................................ 9, 22, 23

*DaCosta v. Prudential Ins. Co. of Am.,*
  No. 10-720, 2010 WL 4722393 (E.D.N.Y. Nov. 12, 2010) .................................... 11

*Dahlgren v. JP Morgan Chase & Co.,*
  No. 12-2367, 2013 WL 3190727 (S.D. Ca. June 20, 2013) ...................................... 5

*Diehl & Sons, Inc. v. International Harvester Co.,*
  445 F. Supp. 283 (D.C. N.Y. 1978) ........................................................................ 8

*Donoghue v. Bulldog Investors Gen. P'ship,*
  696 F.3d 170 (2d Cir. 2012) .................................................................................. 8

*Elmwood–Utica Houses, Inc. v. Buffalo Sewer Authority,*
  96 A.D.2d 174 (4th Dept. 1983) ............................................................................ 7

*Erie County Agricultural Society v. Cluchey,*
  40 N.Y.2d 194 (1976) ............................................................................................ 7

*Estate of Ginor v. Landsberg,*
  159 F.3d 1346, 1998 WL 514304 (2d Cir. 1998) ................................................... 4

*Fed. Heating Co. v. City of Buffalo,*
  182 A.D. 128, 170 N.Y.S. 515 (1918) .................................................................... 4

*Franks Inv. Co. LLC v. Union Pac. R. Co.,*
  593 F.3d 404 (5th Cir. 2010) ............................................................................... 17

*Gerber v. Wells Fargo Bank, N.A.,*
  No. 11-01083, 2012 WL 413997 (D. Ariz. Feb. 9, 2012) .................................... 12, 14, 22, 24

*Ginor v. Landsberg,*
  159 F.3d 1346, 1998 WL 514304 (2d Cir. 1998) ................................................... 4

*Hempstead Realty, LLC. v. Sturrup,*
  No. 205/10, 2011 WL 2972308 (N.Y. Sup. Ct. July 19, 2011) ............................... 7

*Household Fin. Realty Corp. v. Delmerico,*
  202 A.D.2d 636, 609 N.Y.S.2d 310 (2d Dep't 1994) ............................................. 5

*Hurrey-Mayer v. Wells Fargo Home Mortgage, Inc.,*
  No. 09-147, 2009 WL 3647632 (S.D. Cal. Nov. 4, 2009) ..................................... 17

*In re Jones*,
    449 B.R. 494 (Bankr. N.D. W.Va. 2011) ................................................................ 12, 13

*In re Pryor*,
    479 B.R. 694 (Bankr. E.D.N.C. 2012) ........................................................................ 18

*In re Rezulin Products Liability Litigation*,
    No. 00-2843, 2013 WL 22019601 (S.D.N.Y. Aug. 7, 2003) ......................................... 4

*Jeffrey Towers, Inc. v. Straus*,
    31 A.D.2d 319 (N.Y. App. Div. 1969) ......................................................................... 7

*KOSC Dev., Inc. v. Weinstock*,
    14 Misc. 3d 1232(A), 836 N.Y.S.2d 493 (N.Y. Sup. Ct. 2007) .................................... 7

*Lane v. Wells Fargo Bank N.A.*,
    No. 12-04026, 2013 WL 269133 (N.D. Cal. Jan. 24, 2013) ....................... 17, 18, 20

*Marine Midland Bank v. Rome Polymer, Inc.*,
    244 A.D.2d 967, 665 N.Y.S.2d 160 (4th Dep't 1997) ................................................. 5

*McAnaney v. Astoria Fin. Corp.*,
    665 F. Supp. 2d 132 (E.D.N.Y. 2009) ............................................................ 14, 21, 22

*Mikal Realty Co. v. Carreras*,
    268 A.D.2d 435, 702 N.Y.S.2d 311 (2000) ................................................................. 5

*Monroe Retail, Inc. v., RBS Citizens, N.A.*,
    589 F.3d 274 (6th Cir. 2009) ..................................................................................... 23

*Mwantembe v. TD Bank, N.A.*,
    669 F. Supp. 2d 545 (E.D. Pa. 2009) ........................................................................ 17

*O'Neal v. Capital One Auto Fin., Inc.*,
    No. 10-40, 2011 WL 4549148 (N.D.W. Va. Sept. 29, 2011) .................................... 17

*Pac. Capital Bank, N.A. v. Connecticut*,
    542 F.3d 341 (2d Cir. 2008) ...................................................................................... 11

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*,
    274 F.2d 487 (2d Cir. 1960) ........................................................................................ 3

*Pinchot v. Charter One Bank, F.S.B.*,
    99 Ohio St.3d 390 (Ohio 2003) ........................................................... 12, 13, 15, 18

*Ross v. Deutsche Bank Nat. Trust Co.*,
   933 F. Supp. 2d 225 (D. Mass. 2013) ................................................ 11

*Roth v. Delano*,
   338 U.S. 226 (1949) ........................................................................ 20

*Santana v. CitiMortgage, Inc.*,
   No. 054010607, 2006 WL 1530083 (Conn. Super. Ct. May 22, 2006) ............................ 12, 15

*Silver v. Starett*,
   176 Misc.2d 511, 674 N.Y.S.2d 915 (N.Y. Sup. Ct. 1998) .................................... 6

*Skov v. U.S. Bank Nat. Assn.*,
   207 Cal. App. 4th 690 (Cal. App. Ct. 2012) ................................................ 14

*Smith v. BAC Home Loans Servicing, LP*,
   769 F. Supp. 2d 1033 (S.D. W.Va. 2011) ................................................ 17, 21

*Stevens v. State Farm Fire and Gas Co.*,
   929 S.W.2d 665 (Tex. App. 1996) ............................................................ 4

*Tamburri v. Suntrust Mortg., Inc.*,
   875 F. Supp. 2d 1009 (N.D. Cal. 2012) ................................................ passim

*United States v. Fox*,
   94 U.S. 315 (1876) .......................................................................... 16

*United States v. Robinson*,
   702 F.3d 22 (2d Cir. 2012) .................................................................. 3

*Williams v. Wells Fargo National Bank, N.A.*,
   No. 11-21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ................................ 18, 21

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ..................................................................... 13, 17

*Yonek v. Shinseki*,
   722 F.3d 1355 (Fed. Cir. 2013) ............................................................ 11

*Zemel v. Horowitz*,
   11 Misc.3d 1058(A), 2006 WL 516798 (N.Y. Sup. Ct. Mar. 2, 2006) ......................... 4

*Zink v. First Niagara*,
   No. 13-1076, 2014 WL 1870730 (W.D.N.Y. May 9, 2014) ................................ passim

*Zoccolillo v. Weinberg*,
    151 Misc. 653, 273 N.Y.S. 592 (Sup. Ct. Onondaga Cnty. 1934) ............................................ 5

## Statutes

12 U.S.C. § 25b ............................................................................................................................... 9

12 U.S.C. § 371 ............................................................................................................................. 10

12 U.S.C. § 85 ............................................................................................................................... 11

California Code of Civil Procedure 580b ........................................................................................ 5

N.Y. Real Property Law § 317 ...................................................................................................... 24

Section 1921 of the New York Real Property Actions and Proceedings Law ...................... passim

Section 275 of the New York Real Property law ................................................................... passim

## Regulations

12 C.F.R. § 34.3 ........................................................................................................................... 10

12 C.F.R. § 34.4 ..................................................................................................................... passim

12 C.F.R. § 560.2 ............................................................................................................. 13, 21, 22

## Other Authorities

McKinney's Practice Commentaries RPAPL § 1921 (2010) .......................................................... 8

OCC, Interpretive Letter No. 1005, 2004 WL 3465750 (2004) .................................................. 13

## INTRODUCTION

Mortgagors like Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and U.S. Bank National Association, as Trustee under the Trust Agreement for the Structured Asset Investment Loan Trust, Mortgage Pass Through Certificates, Series 2005-8 ("U.S. Bank"), regularly disregard mortgage satisfaction recording requirements.  In response, and to save the county recording system from imminent collapse, the New York Legislature amended Section 1921 of the New York Real Property Actions and Proceedings Law ("§ 1921") and Section 275 of the New York Real Property law ("§ 275") in 2005 to provide for escalating penalties imposed on mortgagees paid to the mortgagor when certificates of discharge are not timely presented.

Defendants seek to avoid liability by arguing that their unlawful conduct is shielded by the National Banking Act ("NBA"), even though they cannot articulate any basis for claiming that a mere reporting requirement significantly interferes with mortgage lending.  Defendants also argue that Plaintiff fails to plausibly allege that the certificate of discharge was not timely presented, and that their untimely presentment precludes Plaintiff's claims, notwithstanding the fact that the certificate was not recorded for more than four months after Defendants and Mr. Bowman agreed that his mortgage was satisfied.  These arguments have already been decisively rejected. *Zink v. First Niagara*, No. 13-1076, 2014 WL 1870730 (W.D.N.Y. May 9, 2014).

Defendants also argue that Plaintiff lacks Article III standing to seek relief under § 1921 and § 275 because Mr. Bowman's mortgage was satisfied by means of an agreed-upon short sale. However, Defendants are liable under New York's mortgage satisfaction laws because an agreed-upon short sale results in the satisfaction of a mortgage, and an agreement that all payments due *under the mortgage* are complete with the proceeds of the short sale.

Plaintiff respectfully suggests that the Court should deny Defendants' motion.

<u>**ARGUMENT**</u>

**I.      Mortgagees Must Comply With § 1921 and § 275**
**When Mortgages Have Been Satisfied By Means Of An Agreed-Upon Short Sale.**

Defendants argue that Plaintiff lacks standing under § 1921 and § 275 because he and Defendants agreed that the mortgage would be satisfied and discharged with the proceeds of an agreed-upon short sale.  Def. Mem. at 6.  This argument fails for three independent reasons.

<u>First</u>, under the plain terms of New York's mortgage satisfaction laws and the short sale agreement between the parties, Defendants are liable for failing to timely present the certificate of discharge.  Under § 1921, Defendants' obligation to timely file a certificate of discharge arose "[a]fter payment of authorized principal, interest and any other amounts due thereunder or otherwise owed by law ha[d] actually been made."  Similarly, under § 275(1), that obligation arose when the "full amount of principal and interest due on the mortgage [had been] paid."

The express terms of the short sale agreement foreclose Defendants' argument that the amount due under the mortgage was not paid.  The May 21, 2012 letter agreement (the "Short Sale Agreement" is Exhibit B to the Muir Declaration) expressly states that "[t]he required payoff for the referenced loan is $285,210.00."  Short Sale Agreement ¶ 1.  The Short Sale Agreement also explicitly provides that the payment of that amount results in the releasing of the mortgage: "Once certified funds are received and approval is final, a document releasing the mortgage will be sent to record this decision."  *Id.* at ¶ 7.

§ 1921 and § 275 provide that mortgagees must timely file certificates of discharge after the amounts due under a mortgage have been paid.  By the agreement of the parties, the amount needed to payoff and discharge the mortgage was $285,210.00.  Mr. Bowman paid that amount

with the proceeds from the short sale, but Defendants did not timely file the certificate of discharge, and they are therefore liable.[1]

Second, Defendants' interpretation of the statutes should be rejected because it will defeat their purpose.[2]  The New York Legislature amended § 1921 and § 275 in 2005 to encourage recalcitrant mortgagees like Defendants to timely file certificates of discharge, because their failure to do so was creating havoc with county land records.  There is no indication that the Legislature intended to exclude short sales; to the contrary, doing so would impede the purpose of the statutes because mortgagors will not timely file certificates for short sales if they are not required to do so (as evidenced by the instant litigation).

Third, Defendants are estopped from now arguing that the mortgage was not satisfied. Defendants entered into a contractual arrangement with Plaintiff whereby they agreed that "[t]he required payoff for the referenced loan is $285,210.00,"  Short Sale Agreement ¶ 1, and that "a document releasing the mortgage will be sent to record this decision."  *Id.* at ¶ 7.  Now, Defendants disavow their contractual agreement and claim that the mortgage was not fully discharged and that they were under no obligation to present a certificate of discharge.  Def. Mem. at 7.  They are estopped from doing so.  *See Armstrong v. Collins*, Nos. 01-2437, 02-2796, 02-3620, 2010 WL 1141158, at *31 (S.D.N.Y. Mar. 24, 2010) (the doctrine of quasi-estoppel

---

[1] Put another way, liability under § 1921 is triggered "[a]fter payment of authorized principal, interest and any other amounts due thereunder or *otherwise owed by law* has actually been made." (emphasis added).  Because the Short Sale Agreement is a binding contract and enforceable by law, the amount owed by law according to the Short Sale Agreement was $285,210.00, which Plaintiff did pay in full.

[2] *See United States v. Robinson*, 702 F.3d 22, 31 (2d Cir. 2012) (statutory interpretation is an "holistic endeavor" in which courts must consider "not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme" (internal quotation marks omitted)); *see also Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) ("[i]t is common place that a literal interpretation of the words of a statute is not always a safe guide to its meaning, and that they may be disregarded when it defeats the manifest purpose of the statute as a whole.").

3

"forbids a party from accepting the benefit of a transaction or statute and then subsequently taking an inconsistent position to avoid the corresponding obligations or effects.").[3]

Similarly, Wells Fargo, acting as US Bank's agent, certified to the Office of the Westchester County Clerk "that it has received full payment and satisfaction of the [mortgage], and in consideration thereof, *does hereby satisfy and discharge said mortgage*." Am. Compl., Exhibit A (emphasis added).  Under the doctrine of quasi-estoppel, a party is precluded from asserting "to another's disadvantage, a right inconsistent with a position previously taken."  *In re Rezulin Products Liability Litigation*, No. 00-2843, 2013 WL22019601, at *2 (S.D.N.Y. Aug. 7, 2003) (internal citations omitted).  Courts regularly estop parties from taking positions that are contrary to those taken before government bodies.[4]

Defendants argue that the full amounts owed were not paid because the Short Sale Agreement preserved Defendants' right to seek a judgment for the difference between the short sale payoff and the amount Plaintiff owed under the initial mortgage agreement.  Def. Mem. at 6-7.  The parties may have agreed that Plaintiff still owed a debt to Defendants, but they also agreed that any such amount was not secured by a mortgage on real property.  In other words, the remaining debt Mr. Bowman owed was converted to a non-mortgage debt, and therefore the mortgage was satisfied.

---

[3] *See also Fed. Heating Co. v. City of Buffalo*, 182 A.D. 128, 137-38, 170 N.Y.S. 515 (1918) ("[T]he arrangement .  . . was made with full knowledge of the existing circumstances . . . So knowing, they entered into the new contractual arrangement, with no indication of their present contention . . . This would appear to be . . . a case of estoppel by contract."); *Stevens v. State Farm Fire and Gas Co.*, 929 S.W.2d 665, 672 (Tex. App. 1996) (parties are "not permitted to take a position inconsistent with [contract] provisions, to the prejudice of another.").

[4] *See, e.g., American Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.* 704 F. Supp. 2d 177, 193 (E.D.N.Y. 2010) ("Quasi-estoppel likewise precludes a party from taking a position in a subsequent action that is contrary to a position taken before an administrative agency."); *Estate of Ginor v. Landsberg*, 159 F.3d 1346, 1998 WL 514304, at *1 (2d Cir. 1998) (party who obtained a tax deduction by representing to IRS on tax return that a wrap note was included in a partnership's property was estopped, in subsequent litigation, from claiming that the note was not a genuine partnership obligation); *Zemel v. Horowitz*, 11 Misc.3d 1058(A), 2006 WL 516798, at *6 (N.Y. Sup. Ct. Mar. 2, 2006) (the plaintiffs were estopped from asserting, in court proceeding, that they sold securities for the purpose of loaning the proceeds to the defendant when, on their tax returns, they reported that they short-sold the securities).

Defendants cite to a number of cases for the proposition that the obligation to timely file a certificate of discharge does not arise when the full amount owed under the mortgage has not been paid, but none of these cases involve short sales wherein the parties agreed that a lesser amount would discharge the mortgage. *See Marine Midland Bank v. Rome Polymer, Inc.*, 244 A.D.2d 967, 968, 665 N.Y.S.2d 160, 162 (4th Dep't 1997); *Mikal Realty Co. v. Carreras*, 268 A.D.2d 435, 435, 702 N.Y.S.2d 311, 311 (2000); *Household Fin. Realty Corp. v. Delmerico*, 202 A.D.2d 636, 637, 609 N.Y.S.2d 310, 310 (2d Dep't 1994).[5]

Defendants' reliance on *Zoccolillo v. Weinberg*, 151 Misc. 653, 654, 273 N.Y.S. 592, 594 (Sup. Ct. Onondaga Cnty. 1934) is likewise unavailing.  There, the court held that the petitioner was not entitled to an order discharging the mortgage because the interest had not been paid, and "even if respondent did agree to waive the interest, such agreement would be without consideration and he now has the power to insist upon the payment of said interest."  151 Misc. at 654, 273 N.Y.S. at 594.  However, the court's statement regarding waiver is *dicta*, as the mortgagee expressly did not waive payment of interest.  *Id.*  Moreover, this decision does not address the circumstances of a short sale, where the parties agree that a sum for less than the amount due will satisfy the mortgage.  And, unlike the mortgagor in *Zoccolillo*, Mr. Bowman did provide consideration for Defendants' agreement to the short sale, namely that Mr. Bowman agreed to sell his home so that Defendants could recoup as much as possible from a transaction gone sour.  Moreover, the Short Sale Agreement expressly provides that Mr. Bowman also provided consideration: "you, as the Seller, for and in consideration of the approval, closing and

---

[5] In an effort to find some case law supporting the proposition that a short sale does not result in the satisfaction of a mortgage, Defendants cite *Dahlgren v. JP Morgan Chase & Co.*, No. 12-2367, 2013 WL 3190727, at *4 (S.D. Ca. June 20, 2013), where, in a simple factual recitation, the court stated that the short sale was for an amount less than the original mortgage.  The issue there was not, of course, whether a mortgagee can flout its obligation to timely file certificates of discharge when there has been a short sale; instead, the question was whether short sales fell within California Code of Civil Procedure 580b, which forbids deficiency judgments following foreclosures.  This case is wholly inapposite.

funding of the short payoff, agree that you will re-execute any documents after closing should

any corrections be needed. . .”  Short Sale Agreement ¶ 3.  In exchange for Defendants'

agreement to a short sale, Plaintiff also agreed to waive any rights to escrow balance, insurance

proceeds or refunds from prepaid expenses.  Short Sale Agreement at p. 1.  Such consideration is

more than sufficient.  *See Silver v. Starett*, 176 Misc.2d 511, 519, 674 N.Y.S.2d 915 (N.Y. Sup.

Ct. 1998) (“The valid consideration which will support a contract need not be equal on both

sides, and if a minimal yielding of a position by one side promotes an agreement, then it will be

deemed enforceable.  There is no need to measure the relative weight of the consideration

provided by each party.”).

   A mortgage is ultimately just a contract, and as with any contract, the parties can agree

to modify its terms.  Here, the parties agreed that the mortgage would be discharged with an

amount that was less than initially agreed.  That does not change the fact that the mortgage was

satisfied, and all agreed-upon amounts were paid, and therefore Defendants are liable for failing

to timely file a certificate of discharge.

## II. That The Certificate Of Discharge Was Ultimately Filed (106 Days Late) Does Not Absolve Defendants Of Their Liability Under § 1921 and § 275.

Defendants argue that only a willful refusal to present a certificate of discharge creates

liability under § 1921 and § 275.  Def. Mem. at 8.  But there is nothing in the plain language of

the statutes that reflects the inclusion of a willfulness requirement in relation to a claim for

statutory damages; to the contrary, the plain language of the statute imposes strict liability for

untimely presentments.  Thus, the *Zink* court rejected this exact argument as being contrary to

the plain language of the statutes:

> [Defendant] argues that [the plaintiff] has failed to allege that it willfully refused
> to present his mortgage satisfaction for recording . . . However . . RPL § 275 and
> RPAPL § 1921 both clearly state that liability for penalties arises upon the

mortgagor's "failure" to timely present the mortgage discharge for filing.  Where the Legislature wished to condition a penalty upon a showing of "willful failure", it said so.  It did not do so here, and I "may not add to a statute language not employed by the Legislature".  Nor may I "add restrictions or limitations where none exist".

*Zink*, 2014 WL 1870730, at *7 (quoting *Elmwood–Utica Houses, Inc. v. Buffalo Sewer Authority* 96 A.D.2d 174, 180 (4th Dept. 1983) and *Erie County Agricultural Society v. Cluchey,* 40 N.Y.2d 194, 200 (1976)).

In support of their willfulness argument, Defendants cite to *Jeffrey Towers, Inc. v. Straus*, 31 A.D.2d 319 (N.Y. App. Div. 1969).  That case predates the 2005 amendments by 36 years, when there were no provisions for statutory penalties.  Then, a mortgagor had to request a discharge, and if the mortgagee then failed to provide one, § 1921(2) provided for the procedures applicable in state court for obtaining a discharge from a recalcitrant mortgagee.  *See* 1993 Sess. Law News of N.Y. Ch. 132, Declaration of D. Greg Blankinship ("Blankinship Dec.") Ex. 1. The *Towers* court held that relief under § 1921 was only available where the mortgagee refused to provide a discharge, because that was all the statute provided in 1969.  *Towers,* 31 A.D.2d  at 324.  Not so now.  Moreover, that statement is *dicta*, as the court found in favor of the mortgagees because the mortgage had not been satisfied.  *Id.*[6]

Defendants appropriately relegate to a footnote their argument that the 2005 amendments were only intended to compensate mortgagors that were forced to pay a second filing fee owing to mortgagees that refuse to file a discharge at all.  Def. Mem. at 8 -9, n. 3.  To the contrary, the

---

[6] Defendant also cites to *KOSC Dev., Inc. v. Weinstock*, 14 Misc. 3d 1232(A), 836 N.Y.S.2d 493 (N.Y. Sup. Ct. 2007), but that court only addresses the "pertinent part" of § 1921 regarding application to a court for a discharge; it says nothing of subdivision one penalties.  *Hempstead Realty, LLC. v. Sturrup*, No. 205/10, 2011 WL 2972308 (N.Y. Sup. Ct. July 19, 2011) likewise concerns a mortgagor's disputed claim that it had satisfied the mortgage; the court nowhere addresses the issue of penalties.

Legislature adopted the progressively higher penalties to address the pervasive failure of

mortgagees to file *in a timely manner* discharge certificates:

> In an effort to overcome an apparent problem resulting from the failure of lenders to execute and record a certificate of discharge of mortgage *in a timely manner* following the payment in full of a mortgage debt, subdivision 1 of  RPAPL § 1921 was amended by the Laws of 2005, ch. 467, to impose a progressively higher monetary liability upon mortgagees in favor of mortgagors . . .

McKinney's Practice Commentaries RPAPL § 1921 (2012) (emphasis added).[7]

Under Defendants' interpretation of the statute, there could never be a penalty as long as

the certificate of discharge was eventually filed.  That argument was decisively rejected by the

*Zink* court because it "would effectively nullify the penalty provisions (which increase

commensurately with the period of delay in presenting the discharge certificate)."  *Zink,* 2014

WL 1870730,  at *7 (citation omitted).[8]

---

[7] This conclusion is buttressed by the legislative history.  The New York State Senate Introducer's Memorandum In Support of the 2005 amendments to § 275 described the purpose as: "to insure that a certificate of discharge of mortgage is properly and timely issued and to impose a penalty on the lending institution or person(s) holding the mortgage for failing to do so."  Muir Dec. Exhibit C, at p. 4.  Any doubt that the purpose of the penalties is to prevent belated filings (rather than just to compensate mortgagors who have to force recalcitrant mortgagees to present certificates of discharge) is dispelled by the New York State Assembly Memorandum In Support of Legislation, which notes that despite the then-existing requirement that mortgagees file certificates, "there have been many cases in which customers have waited for months without ever receiving their satisfaction of mortgage statement.  This legislation is designed to prevent these delays from continuing."  *See* New York State Assembly Memorandum In Support Of Legislation (Blankinship Dec. Exhibit 2, at 17).

[8] Without citation to case law, Defendants imply that this Court lacks subject matter jurisdiction because Mr. Bowman did not suffer economic injury.  Def. Mem. ay 8-9.  But it is well settled under New York law that statutes that provide penalties create private rights of action.  *See Diehl & Sons, Inc. v. International Harvester Co.*, 445 F. Supp. 283, 289 (D.C. N.Y. 1978) ("The general rule in New York is that statutes which on their face provide penal sanctions also imply a private right of action.").  It is also settled that a plaintiff seeking a statutory penalty, even absent economic injury, has standing to bring such a claim.  As the Second Circuit holds, "where, as here, a plaintiff's claim of injury in fact depends on legal rights conferred by statute, it is the particular statute and the rights it conveys that guide the standing determination."  *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 178 (2d Cir. 2012) (citation omitted).  § 1921 and § 275 each provide for damages for statutory violations and, thus, Plaintiff has standing to seek judicial relief.  *See, e.g., Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 762-63 (3d Cir. 2009) (plaintiff had standing to seek statutory damages, even with no "resultant monetary injury").

**III.    Mortgage Satisfaction Laws Are Not Preempted**
**By The National Banking Act Or OCC Regulations.**

Under long standing Supreme Court precedent, a state law is not preempted unless it *significantly interferes* with banking activities authorized by the NBA or OCC regulations.[9] Congress codified this standard in the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), which contains a provision addressing NBA preemption: "State consumer financial laws are preempted, only if . . . application of a State consumer financial law would have a discriminatory effect on national banks . . . [or if] in accordance with  . . . [*Barnett*], the . . . law *prevents or significantly interferes* with the exercise by the national bank of its powers." 12 U.S.C. § 25b(b)(1) (emphasis added).  *See also Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 529, 534 (2009) (rejecting OCC's broad statement of its preemption powers and holding that "[n]o one denies that the [NBA] leaves in place some state substantive laws affecting banks," and recognizing that states "have enforced their banking-related laws against national banks for at least 85 years.").

Defendants cannot credibly argue that a mere recording requirement significantly interferes with its lending activities.  To the contrary, § 1921 and § 275 support banks' ability to make real estate loans; absent enforceable recording requirements, lending on real estate in New York would grind to a halt because title companies and banks would not be able to determine whether real property is free and clear of other loans.  Am. Comp. ¶ 10.  As the *Zink* court held, "[Defendant] does not explain why subjecting it to a penalty upon its failure to [present a mortgage satisfaction] within 30 days of payment would 'prevent or significantly interfere with the . . . exercise of its powers', as in *Barnett Bank*."  *Zink*, 2014 WL 1870730, at *6.

---

[9] *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996) ("[N]ormally Congress would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted.  To say this is not to deprive States of the power to regulate national banks, where (unlike here) doing so does not *prevent or significantly interfere* with the national bank's exercise of its powers.") (emphasis added)).

Moreover, as a threshold matter, Defendants cannot show that 12 C.F.R. § 34.4(a)(10), the OCC regulation upon which Defendants rely as a basis for claiming that New York's mortgage satisfaction laws are preempted, is applicable, both because Defendants did not "make" the loan in question and because filing mortgage satisfactions after a loan is complete does not implicate "servicing" or "processing."  And even if Defendants can make that showing (and they cannot), New York's mortgage satisfaction laws are excluded from preemption under 12 C.F.R. § 34.4(b)(6), pursuant to which state laws regarding the acquisition and transfer of real property are not preempted.

**A.     Because Defendants Did Not Make**
**Mr. Bowman's Loan, They Cannot Avoid Liability Under 12 C.F.R. § 34.4(a).**

The NBA provides that "[a]ny national banking association may make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to . . . such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order."  12 U.S.C. § 371.  Pursuant to that statute, the OCC promulgated 12 C.F.R. § 34.3(a), which authorizes national banks to "make, arrange, purchase, or sell loans" subject to certain restrictions.  While the OCC chose to use the broadest scope of its powers in authorizing banks to make, arrange, purchase, or sell real estate loans, in contrast, it chose to provide for preemption under more limited circumstances, namely only when a bank *makes* a loan.  Thus, 12 C.F.R. § 34.4(a) provides that "[a] national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning" specified lending activities.  The *Zink* court correctly concluded under hornbook law regarding judicial interpretation of regulations that "[t]his difference in language cannot be ignored."  *Zink*, 2014 WL 1870730, at

10

*3 (citing *DaCosta v. Prudential Ins. Co. of Am.*, No. 10-720, 2010 WL 4722393, at *5 (E.D.N.Y. Nov. 12, 2010)).[10]

The *Zink* court's conclusion is buttressed by *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1049 (N.D. Cal. 2013).  There, like here, Wells Fargo also sought refuge in § 34.4(a) to avoid liability in connection with claims brought by a class of mortgagors.  The court rejected Wells Fargo's preemption defense, because, like here, Wells Fargo was merely the servicer, rather than the originator, of the loan: "It is difficult to see how there can be preemption pursuant to § 34.4.  Section 34.4(a) expressly provides that a national bank has powers with respect to 'mak[ing] real estate loans' without regard to state law limitations.  *Id.* § 34.4(a).  But here, Wells Fargo did not extend a real estate loan to Plaintiffs; rather, it was simply the servicer of Plaintiffs' loan."  *Id.* at 1049.  US Bank's status as trustee rather than originator also forecloses its preemption defense.  *See Ross v. Deutsche Bank Nat. Trust Co.*, 933 F. Supp. 2d 225, 233 (D. Mass. 2013) ("Because the Deutsche Bank trustee neither originated the loan, funded the loan at inception, nor purchased the loans as part of any real estate lending program comprehended by the regulation, the Massachusetts right-to-cure law is not preempted . . .").[11]

Because Defendants did not "make" Mr. Bowman's loan, they cannot seek protection under 12 C.F.R. § 34.4(a)(10).

---

[10] *See also Yonek v. Shinseki*, 722 F.3d 1355, 1359 (Fed. Cir. 2013) ("Where an agency includes particular language in one section of a regulation but omits it in another . . . it is generally presumed that the agency acts intentionally and purposely in the disparate inclusion or exclusion.") (quotations and internal alterations omitted).

[11] Defendants' citation to *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 352 (2d Cir. 2008) is unavailing.  This decision, issued years before Dodd-Frank, does not address 12 C.F.R. § 34.4 and whether the OCC intended to provide for preemption of specified servicing and processing activities for banks that did not make loans.  Instead, the pre-emption issue there involved the provision in the NBA itself that allows a bank to charge interest based on the laws of the state in which the bank is located.  12 U.S.C. § 85.  But 12 C.F.R. § 34.4(a) contains a limitation that the NBA interest provision does not, namely that the former is explicitly limited to banks that "make" loans.  *Pacific Capital* no where addresses this issue.

**B.    Mortgage Satisfaction Requirements Do Not Implicate**
**Banks' Servicing And Processing Activities Under § 34.4(a)(10).**

Defendants rely on 12 C.F.R. § 34.4(a)(10), which provides that a bank may make loans without regard to state law limitations regarding servicing and processing of mortgages.  Def. Mem. at 10.  Relying on well-reasoned decisions, the *Zink* court correctly concluded that mortgage satisfaction laws do not implicate processing and servicing of loans because the satisfaction requirement arises only after a loan is completed.  *Zink*, 2014 WL 1870730, at *5 ("RPL § 275 and RPAPL § 1921 are not preempted by 12 C.F.R. § 34.4(a)(10)").

Addressing Connecticut's similar mortgage satisfaction statute, the court in *Santana v. CitiMortgage, Inc.*, No. 054010607, 2006 WL 1530083 (Conn. Super. Ct. May 22, 2006) concluded that satisfaction requirements only arise after a loan is complete and therefore do not implicate servicing and processing:

> Executing a release does not occur during the lifetime of a loan, therefore it does not constitute servicing of the loan under 12 C.F.R. § (b)(10), because there is no longer a loan to service.  The only issue that remains in the present matter is for the mortgagee to provide a release of the encumbrance to record on the land records.  The payoff statement has been received and all outstanding amounts have been paid by the plaintiff.

*Id*. at * 3.[12]

The court in *Pinchot v. Charter One Bank, F.S.B.*, 99 Ohio St.3d 390 (Ohio 2003) also persuasively reasoned that mortgage recording requirements do not implicate servicing and processing because they are not integral to lending activities:

---

[12] *See also Aguayo v. U.S. Bank*, 653 F.3d 912, 925 (9th Cir. 2011) ("While it is true the Rees–Levering provisions affect U.S. Bank in some ways, we do not agree that they affect the bank's *lending* operations.  There is no loan at this juncture, but merely an outstanding debt U.S. Bank has sought to recover using a remedy provided for under state law."); *Gerber v. Wells Fargo Bank, N.A.*, No. 11-01083, 2012 WL 413997, at *8 (D. Ariz. Feb. 9, 2012), (finding no preemption and noting that the term "processing" "concern[s] . . . the loan's existence."); *In re Jones*, 449 B.R. 494, 500 (Bankr. N.D. W.Va. 2011) ("Servicing a loan generally entails sending billing statements and keeping track of payments, a central component of loan administration . . .").

> The recording of a mortgage satisfaction or real estate lien release is not an integral part of the lending process, as it occurs after the debt is satisfied and the extension of credit is extinguished.  Such a recording requirement cannot even begin until the mortgage has already been terminated.  It does not center around the essential reasons lenders issue home loans, for it has nothing to do with charging and collecting interest or any other lending or credit-related function.  And such a recording requirement cannot be realistically connected to lending practices or to the operations of savings associations because it has no concrete significance to whether and how loans are made.

*Pinchot* at 398.[13]

The OCC itself also confirms that New York's mortgage satisfaction procedures do not fall within the servicing and processing catch all in 12 C.F.R. § 34.4(a)(10).  In a 2004 Interpretive Letter, the OCC stated that preemption applies only to those "types and features of state laws pertaining to making loans . . . that are *specifically listed* in the regulation."  OCC Interpretive Letter No. 1005, 2004 WL 3465750 (emphasis added).  Citing this letter, the court in *Gerber* confirmed that the term "servicing" cannot be used to preempt any state law that relates to mortgages.  The court concluded that 12 C.F.R. § 34.4 does not restrict state laws concerning foreclosure, even if such laws "pertained" to servicing loans:

> Wells Fargo argues that "servicing" (within item 10) includes foreclosure . . . Wells Fargo's argument is not persuasive . . . the OCC said that preemption applies only to those "types and features of state laws pertaining to making loans . . . . that are *specifically listed* in the regulation."  The OCC went to the trouble of specificity concerning other phases of the loan's existence (*e.g.,* "processing,"

---

[13] The *Pinchot* court also noted that "[t]here is nothing in either the lending regulations themselves or in the regulatory history to indicate that the OTS intended . . . to include the filing of notices of mortgage satisfactions within the preempted category of mortgage servicing under Section 560.2(b)(10)."  *Id.*  Likewise, Defendants cannot point to anything in the legislative history of the NBA or any guidance from the OCC indicating an intent to preempt mortgage recording requirements.  This is fatal to Defendants' motion.  *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (holding that there are "two cornerstones of our pre-emption jurisprudence.  First, the purpose of Congress is the ultimate touchstone in every pre-emption case.  Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (internal quotations and alterations omitted).

"origination") but did not list "foreclosure," and it is therefore difficult to assume
that it meant to include it within a "servicing" catch-all . . .

*Id*, 2012 WL 413997, at *8 (citations omitted).  If the OCC intended to preclude states from
requiring that national banks timely file certificates of discharge, it would have explicitly done
so.  *See Zink,* 2014 WL 1870730, at *5 ("Federal agencies such as the OCC have a unique
understanding of the statutes they administer and an attendant ability to make informed
determinations about how state requirements may pose an obstacle to the accomplishment and
execution of the full purposes and objectives of Congress . . . had the OCC intended 12 C.F.R. §
34.4(a)(10) to preempt state laws relating to the filing of mortgage discharges, it would have
specifically listed that activity in the regulation.") (quotation omitted).[14]  As the *Zink* court noted,
this "conclusion is buttressed by the fact that § 34.4(a)(10) specifically mentions mortgage
'origination', which is the opposite of mortgage discharge."  *Id.* at *5 n.9.[15]

**C.**    **Because § 1921 And § 275 Are Crucial Mechanisms By Which States
Historically Ensure That Property Can Be Securely And Effectively Acquired
And Transferred, They Are Saved From Preemption By 12 C.F.R. § 34.4(b)(6).**

New York's mortgage satisfaction laws fall squarely in the 12 C.F.R. § 34.4(b)(6)
savings clause for state laws concerning the acquisition and transfer of real property.  That clause
provides that "[s]tate laws on the following subjects are not inconsistent with the real estate

---

[14] *C.f., Skov v. U.S. Bank Nat. Assn.*, 207 Cal. App. 4th 690, 701 (Cal. App. Ct. 2012) ("Given the traditional state
control over mortgage foreclosure laws, it is logical to conclude that if the [OTS] wanted to include foreclosure as
within the preempted category of *loan servicing,* it would have been explicit.").

[15] Defendants make no attempt to explain why filing a certificate of discharge after a loan is complete implicates the
servicing and processing of that loan.  Defendants may belatedly cite to *McAnaney v. Astoria Fin. Corp.*, 665 F.
Supp. 2d 132 (E.D.N.Y. 2009) and *Cassese v. Washington Mut., Inc.*, 255 F.R.D. 89 (E.D.N.Y. 2008).  However, as
the *Zink* court recognized, neither of these cases contain any analysis as to why presenting a discharge certificate
implicates servicing and processing.  *Zink*, 2014 WL 1870730, at *4.  Nor were those courts required to reach that
issue; under pre-Dodd-Frank OTS regulation, a state law that related in any way to savings and loans' lending
activities were preempted; thus, whether a particular activity fell within the serving or processing rubric was not
dispositive.

lending powers of national banks and apply to national banks to the extent consistent with the decision of the Supreme Court in *Barnett*. . . [including] [a]cquisition and transfer of real property." 12 C.F.R. § 34.4(b)(6).  Thus, because New York's mortgage satisfaction laws fall within the rubric of acquisition and transfer, there can be no preemption.  *See Zink*, 2014 WL 1870730, at *5 ("Among the listed categories are laws relating to the '[a]cquisition and transfer of real property'. 12 C.F.R. § 34.4(b)(6) . . . RPL § 275 and RPAPL § 1921 fall within this category.") (citing *Pinchot* and *Santana*).

Pinchot is instructive.  There, the defendant, like Wells Fargo and US Bank, argued that complying with multiple states' disparate recording statutes caused more than an incidental effect on its lending programs.  Like the *Zink* court, the Supreme Court of Ohio rejected that claim out of hand and further reasoned that, because mortgage satisfaction statutes are essential mechanisms by which the titles to real property are cleared and transferred, they are not preempted:

> According to Charter One, "The costs associated with compliance with state recording statutes, standing alone, have more than an incidental effect on the lending operations of Charter One," which "has mortgages in 46 states"  . . . We find it exceedingly difficult to take these arguments seriously, however, since Charter One  . . . undertook to complete the recording process in this case subject to a provision in the mortgage agreement  . . . we agree with the court of appeals that "R.C. 5301.36 is intended to promote efficiency and certainty in clearing and transferring title in residential real property transactions . . ."  It is . . . "a real property statute not only in name, but in purpose and effect, and has only an incidental effect on Charter One's lending practices."

*Pinchot*  at 401.[16]

---

[16] *See also Santana*, 2006 WL 1530083, at *5 (Connecticut's mortgage recording statute "'was enacted and continues not only to protect property owners, but it has a more general purpose of enhancing the marketability of titles and facilitating economic intercourse in deeded transactions' . . . § 49-8 does not concern lending, and is more concerned with the marketability of land titles.") (quoting *Bellemare v. Wachovia Mortgage Corp.*, 94 Conn. App. 593, 605 (2006)).

These decisions are consistent with Supreme Court jurisprudence regarding the NBA and historic state powers relating to real property.  In fact, the phrase "acquisition and transfer" has roots in NBA jurisprudence, and it refers to the modes and procedures by which real property is transferred and title secured.  As the Supreme Court held, shortly after passage of the NBA "[t]he power of the State to regulate the tenure of real property within her limits, *and the modes of its acquisition and transfer*, and the rules of its descent . . . is undoubted."  *United States v. Fox*, 94 U.S. 315, 320-21 (1876) (emphasis added; citation omitted).[17]  The security of the title of real property lies squarely within states' historic state power, and the county recording system is the means by which states ensure that the titles to property are both secure and amenable to orderly acquisition and transfer.  Plaintiff's claims are thus saved from preemption.

## D.     Defendants Cannot Meet Their Burden Of Showing That § 1921 And § 275 Significantly Interfere With Banks' Real Estate Lending Activities.

Even if Defendants made Plaintiff's mortgage loan (they did not), and even if New York's mortgage satisfaction laws fall within the ambit of servicing and processing of mortgages (they do not) but not acquisition and transfer of real estate (they do), Defendants' preemption defense fails unless they can show that a mere reporting requirement somehow significantly interferes with banks' ability to make loans backed by real property.  *See Cannon,* 917 F. Supp. 2d at 1049-50 (finding no preemption because "even if § 7.4002 were applicable (or for that matter § 34.4), there would be preemption only if the state law prevents or significantly restricts the national bank's powers.").  As this Court noted during the pre-motion conference:

> [I]t's certainly not the law that a national bank is exempt from state law that has anything to do with their business.  I mean, if that were so, then literally there will

---

[17] *See also  BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544-45 (1994) ("It is beyond question that an essential state interest is at issue here: We have said that the general welfare of society is involved in the security of the titles to real estate and the power to ensure that security inheres in the very nature of state government.") (quotations and internal alterations omitted).

be no banking regulations whatsoever except those passed by Congress.  So, it has to be that there are some state regulations of banks that are okay and I just don't understand why this isn't one of them.

March 18, 2014 Transcript of Oral Argument at 5:10–6:18 (Blankinship Dec. Ex. 3).

1.     **Defendants Bear The Burden Of Demonstrating That There Is An Irreconcilable Conflict Between § 1921 Or § 275 And The NBA.**

As the Supreme Court has made abundantly clear, courts must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth*, 555 U.S. at 569.  The presumption against preemption is especially strong in "areas of law traditionally reserved to the states, like police powers and property law." *Franks Inv. Co. LLC v. Union Pac. R. Co.*, 593 F.3d 404, 407 (5th Cir. 2010) (reversing dismissal on preemption grounds).[18]  In light of this assumption, Defendants bear the burden of establishing preemption. *Wyeth*, 555 U.S. at 569.[19]  Courts routinely deny preemption defenses where, as here, defendants fail to show an actual significant interference. *See, e.g., Zink,* 2014 WL 1870730, at *6.[20]

---

[18] The presumption is also strong here because there is no parallel federal rule concerning mortgage satisfactions. *See Smith v. BAC Home Loans Servicing, LP*, 769 F. Supp. 2d 1033, 1038 (S.D. W.Va. 2011) (finding no NBA preemption and holding that "the presumption against preemption is 'stronger still against preemption of state remedies . . . when no federal remedy exists.'") (quoting *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 192 (4th Cir. 2007)).

[19] *See also Mwantembe v. TD Bank, N.A.*, 669 F. Supp. 2d 545, 549 (E.D. Pa. 2009) (finding no preemption and noting that in *Cuomo*, "the Supreme Court caused a sea change in the perception of the preemptive effect of the NBA and the OCC regulations.  Before this pronouncement, courts appeared to be expanding the scope of federal preemption for national banks. . . . *Cuomo* reverses this trend and has dispelled the popular notion that all state laws that affect national banks in any way or to any degree are preempted.").

[20] *See also Bank of New York v. Romero*, 320 P.3d 1, 15 (N.M. Sup. Ct. 2014) (finding no preemption where "the Bank provides no evidence that conforming to the dictates of the [state law] prevents or significantly interferes with a national bank's operations."); *Agustin v. PNC Fin. Servs. Grp., Inc.*, 707 F. Supp. 2d 1080, 1097 (D. Haw. 2010) (denying motion to dismiss because "PNC fails to carry its burden of proving that a UDAP claim conflicts with federal law."); *O'Neal v. Capital One Auto Fin., Inc.*, No. 10-40, 2011 WL 4549148, at *3 (N.D.W. Va. Sept. 29, 2011) (denying motion for judgment on the pleadings because defendant "failed to adequately explain how section 128(e) significantly interferes with its enumerated or incidental powers under the NBA.") (citation omitted); *Hurrey-Mayer v. Wells Fargo Home Mortgage, Inc.*, No. 09-147, 2009 WL 3647632, at *3 (S.D. Cal. Nov. 4, 2009) ("Defendant . . . fails to explain how Plaintiff's . . . claim . . . effects Defendant's ability to make real estate loans. Absent this explanation, Defendant has not shown that Plaintiff's . . . claim is preempted by the NBA."); *Lane v.*

2.    **There Is No Conflict Between § 1921 Or § 275 And The NBA.**

Defendants must show that New York's mortgage satisfaction laws significantly interfere

with lending.  But Defendants do no more than parrot the standard by stating in a conclusory

fashion that the statutes "significantly burden" or "significantly impair" banks' lending activities,

Def. Mem. at 11-13, and by relying on *McAnaney* and *Cassese*, which found that § 1921 was

preempted under the Home Owner's Loan Act ("HOLA") because it "directly impacts" and

"impose[s] obligations" on banks.  Def. Mem. at 12.  But simply showing that a law imposes a

requirement on a bank or relates to lending is not enough under the NBA; instead, Defendants

must show that the law is a significant burden, which they cannot do.  *See Pinchot,* 792 N.E.2d at

1116 (holding that similar statutory penalty "has only an incidental effect on Charter One's

lending practices").[21]  To the contrary, these statutes simply impose a procedural requirement on

lenders to file discharge certificates so that the acquisition and transfer of the previously

encumbered property can be smoothly accomplished.  Rather than there being a conflict, § 1921

and § 275 are simply procedures that bolster banks' ability to engage in real estate lending.

Cases related to state foreclosure laws are instructive, where courts routinely reject

preemption defenses, notwithstanding the fact that state foreclosure laws plainly affect banks'

ability to enforce the terms of real estate loans (far more so than mortgage satisfaction laws).  For

example, in *Tamburri*, the defendant challenged California's law requiring mortgagees to contact

---

*Wells Fargo Bank N.A.*, No. 12-04026, 2013 WL 269133, at *13 (N.D. Cal. Jan. 24, 2013) ("Wells Fargo [has not] demonstrated that refraining from the challenged wrongful conduct would prevent or significantly interfere with its ability to engage in the business of banking.") (quotation omitted).

[21] *See also Williams v. Wells Fargo Bank N.A.*, No. 11-21233, 2011 WL 4901346, at *8 (S.D. Fla. Oct. 14, 2011) (finding no preemption because "[a]t most, the[] laws only *incidentally* affect the exercise of a bank's powers"); *Lane*, 2013 WL 269133, at *13 (finding no preemption and holding that "Plaintiffs' claim  . . . is not preempted merely because it could be said to relate to the bank's activities as lender and servicer."); *In re Pryor*, 479 B.R. 694, 700 (Bankr. E.D.N.C. 2012) (finding no preemption).

mortgagors before filing a notice of default on the loan.  The court found no preemption,

reasoning that the notice requirement was merely procedural:

> Under NBA conflict preemption, Plaintiff's § 2923.5 claim does not impose any constraints on banks' lending or servicing powers.  Rather, it only incidentally affect[s] the exercise of national banks' real estate lending powers by requiring certain procedural hurdles before a bank may foreclose on real property and transfer said property to a new owner.

*Id.,* 875 F. Supp. 2d at 1020 (quotation omitted).

The court in *Cabrera v. Countrywide Home Loans Inc.*, No. 11-4869, 2013 WL 1345083

(N.D. Cal. Apr. 2, 2013) also denied a motion to dismiss on preemption grounds.  There, the

defendant challenged a California statute that imposes limitations on banks' lending powers by

forbidding foreclosures while a modification application is pending.  The court concluded that

the statute was not preempted because it merely imposed a procedural requirement:

> Cabrera's unfair foreclosure claim  . . . "only incidentally affect[s] the exercise of national banks' real estate lending powers" by requiring certain procedural hurdles before a bank may foreclose. . . Cabrera's . . . claim is not preempted by the NBA because it merely delays the foreclosure of real property, and does not impair defendants' ability to exercise its  . . . powers [to] transfer property.

*Id.*, at *7.

These decisions reflect OCC's view that state laws that merely establish the legal

infrastructure for banking business do not unduly burden national banks.  Indeed, "after

promulgating the preemption rule, the OCC explained that the regulation's savings clause

language was intended to preserve 'undiscriminating' state laws 'that form the legal

infrastructure for conducting a banking or other business' -- *i.e.*, state laws that do not

discriminate against banks and that instead apply equally to banks and other businesses."

*Aguyao v. U.S. Bank*, 653 F.3d 912, 924 (9th Cir. 2011).[22]

At their core, § 1921 and § 275 merely establish a reporting requirement to ensure that the acquisition and transfer of property is conducted in an orderly and effective fashion; the statutes do not in any way encumber banks' right or ability to make and service real estate loans. Thus, the court in *Lane* found no preemption of state laws of general applicability that conditioned the manner in which banks could force place insurance, reasoning that "[e]nforcing state law, such as by allowing suit for a homeowner to enforce a savings and loan association's mortgage agreement, or a claim for fraudulent misrepresentation, would complement rather than substitute for the federal regulatory scheme.  So too here." *Lane*, 2013 WL 269133, at *13 (quotation omitted).

Defendants cannot cogently argue that a simple reporting requirement is burdensome.  As the Supreme Court held in an analogous situation:

> We also held no interference with a bank's federal function to result from a mere requirement that it make a report to the State of unclaimed property, any more than from a requirement that it report to the State tangible property therein for the purposes of taxation . . . It would not seem too much to ask that a federal officer, possessed of property claimed by the State to be subject to its taxing or escheat power, make reasonable disclosure thereof to such authority as the State designates.  It is but a decent comity between governments.

*Roth v. Delano*, 338 U.S. 226, 230 (1949).

---

[22] Defendants assert that § 1921 and § 275 are not laws of general application because they apply to mortgage lenders, not all businesses.  Def. Mem. at 11.  But whether a law is generally applicable, and thus not preempted, turns on whether the law targets national banks, not just lenders in general.  *See Aguyao*, 653 F.3d at 924 (finding no discrimination where regulation effected local and national lenders equally); *Romero*, 320 P.3d at 15 ("[T]he [state law] does not create a discriminatory effect; rather, [it] applies to any . . . 'person who regularly [offers or] makes a home loan.'  Any entity that makes home loans in New Mexico must follow the [statute], regardless of whether the lender is a state or nationally chartered bank.").  New York's mortgage satisfaction laws are generally applicable because they apply to **all** lenders, whether they be national banks, state banks, or any other entity that makes mortgage loans.

Defendants rely on *McAnaney* and *Cassese* in support of their claim that § 1921 and § 275 significantly interfere with lending. But these cases apply field or express preemption under pre-Dodd Frank standards applicable to savings and loan associations under the HOLA.[23] Neither case addresses the question of whether the laws at issue imposed a significant burden on lending activities. Nor do *McAnaney* nor *Cassese* examine whether § 1921(1) and § 275(1) fall within the 12 C.F.R.§ 34.4(b) savings clause, because HOLA did not then have such a clause.

Indeed, it is settled that cases decided before Dodd-Frank under HOLA are inapposite to preemption under the NBA. In *Tamburri v. Suntrust Mortg., Inc.* 875 F. Supp. 2d 1009 (N.D. Cal. 2012), the court held that "the analogy between the NBA and HOLA is flawed. Unlike the NBA, which contains only a conflict preemption clause, HOLA contains a broad field preemption clause." *Tamburri,* 875 F. Supp. 2d at 1017 (citing 12 C.F.R. § 560.2(a)). Thus, "[t]he distinction between HOLA's field preemption, on the one hand, and NBA's mere conflict preemption, on the other, renders cases construing HOLA preemption inapposite to the question of whether NBA preemption applies." *Id.* at 1018. *See also Agustin*, 707 F. Supp. 2d at 1097 (finding no preemption and collecting cases finding HOLA preemption inapplicable under NBA); *Williams v. Wells Fargo National Bank, N.A.*, No. 11-21233, 2011 WL 4901346, at *9 (S.D. Fla. Oct. 14, 2011) (collecting cases).[24]

---

[23] *Cassese*, 255 F.R.D. at 94. ("Pursuant to the broad reach of HOLA . . . [and] the express preemption of the entire field, the Court found the state enactments . . . preempted."); *McAnaney*, 665 F. Supp. 2d at 157 ("[S]tate law that affects the activities of federal savings associations are broadly preempted, except where otherwise provided in the regulations.").

[24] Defendants may argue that the pre-Dodd Frank HOLA preemption analysis employed by *McAnaney* and *Cassese* is applicable to post-Dodd Frank NBA preemption because OCC regulation 12 C.F.R. §34.4(a)(10) (providing that banks may service and process real estate loans) uses the same language as 12 C.F.R. § 560.2(b)(10) (providing that OTS regulations occupy the savings and loan field and listing processing and servicing of loans as a specific but not limiting example). But the mere fact that the language in subsections 10 of each regulation are the same is irrelevant. Before Dodd Frank, HOLA and OTS regulations occupied the entire field relating to lending activities by savings and loans. *See* 12 C.F.R. § 560.2(a) ("OTS hereby occupies the entire field of lending regulation for federal savings associations."). OCC regulations do not contain such a field preemption statement. *See Smith*, 769 F. Supp.

Thus, "[a]ccording to OTS, the preemption analysis under § 560.2 is intended to proceed as follows: [T]he first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted." *McAnaney*., 665 F. Supp. at 132.  In contrast, under the NBA, a court must find that the regulation imposes a significant burden (which, as discussed above, Defendants cannot show).  *See Gerber*, 2012 WL 413997, at *4 ("[T]here are subtle differences between the regulation of savings and loan institutions and national bank associations.  Most importantly, the OCC has explicitly avoided full field preemption in its rulemaking and has not been granted full field preemption by Congress.  Despite the similarity in language between the OTS's and OCC's preemption regulations, the Ninth Circuit rejects applying the OTS/HOLA analysis to OCC/NBA questions.").  Just because OTS and OCC regulations use similar language does not relieve Defendants of their burden to show that § 1921 and § 275 impose a significant burden on banking.[25]

Defendants argue that New York's mortgage satisfaction laws are burdensome because they differ from other states' laws.  Def. Mem. at 11.  But this argument proves too much.  The Supreme Court makes clear that not all state laws are preempted, *see Barnett*, 517 U.S. at 33, and *Cuomo*, 557 U.S. at 52, yet states' laws necessarily always differ.  If the mere fact that a state law differs from other states' laws was sufficient to show a significant burden, then no state law could survive preemption.  This is clearly not the law, particularly given the regularity with

---

2d at 1043 (finding no preemption and rejecting comparison to HOLA because "the OTS has 'occupied the field' of savings and loan real estate lending, whereas the OCC has not.") (citations omitted).

[25] After Dodd-Frank, even the HOLA analysis applied by Defendant's cases is no longer good law.  *See Tamburri*, 875 F. Supp. 2d at 1018–19 ("The Dodd-Frank Act changed the above-described HOLA preemption analysis and mandates that HOLA preemption would now follow the more lenient NBA conflict preemption standard.").

which courts reject preemption of state foreclosure laws, which differed drastically from state to state.[26]

Defendants also claim without support that the "excessive monetary penalties" imposed by § 1921 and § 275 justify preemption.  Def. Mem. at 12.   But this argument is foreclosed by *Cuomo*, where the Supreme Court rejected the argument that enforcement of an otherwise non-preempted state law can itself create preemption:   "No one denies that the [NBA] leaves in place some state substantive laws affecting banks.  But the Comptroller's rule says that the State may not enforce its valid, non-pre-empted laws against national banks.  The bark remains, but the bite does not."  557 U.S. at 529.  There is no precedent for the claim that a penalty for failing to comply with an otherwise valid reporting requirement significantly interferes with banks' lending activities.[27]

Defendants also assert that the requirement that they timely file certificates of discharge "completely undermine[s] national banks' express authority to establish charges and fees."  Def. Mem. at 13.   But Defendants never explain this argument; nor can they.  The rule that banks must timely file certificates of discharge does not relate to, much less "completely undermine," banks ability to set fees; just because lenders must timely file certificates of discharge does not mean they cannot charge what ever fee they wish for doing so.  In support of this dubious claim, Defendants cite to *Monroe Retail, Inc. v., RBS Citizens, N.A.*, 589 F.3d 274 (6th Cir. 2009), but that case is distinguishable because the state law at issue actually imposed a significant burden,

---

[26] The only authority Defendants cite for this dubious proposition is *Abel v. Keybank USA, N.A.*, 313 F. Supp. 2d 720 (N.D. Ohio 2004).  But that pre-Dodd-Frank opinion is distinguishable because the state law at issue there actually did interfere with lending for reasons other than the simple fact that states' laws differ.  *Id.* at 720.

[27] Similarly, Defendants argue without support that the 30 day deadline is "arbitrary."  But any law that requires an affirmative action must have a deadline; otherwise, banks like Defendants do not comply, as demonstrated by the instant litigation.  Nor can Defendants articulate why a 30 day deadline to file a short form is at all burdensome.

namely requiring banks to freeze accounts upon receipt of a garnishment order, which is plainly

an interference in banking business substantially greater than a reporting requirement.[28]

In essence, Defendants ask this Court to bring down the system for recording mortgage

encumbrances throughout the United States.  Fortunately for the stability of our economic

system, courts deny preemption defenses where the consequence, if granted, would be to

eviscerate a state law of general applicability.[29]

## IV.    The Amended Complaint Pleads A
## Valid Claim For Relief Under § 1921 And § 275.

Defendants are incorrect when they claim that Plaintiff pleads no facts rendering it

plausible that Defendants did not make timely arrangements for presentment.  The Satisfaction of

Mortgage (attached to the Amended Complaint as Exhibit A) was recorded on December 14,

2012.  Plaintiff's mortgage was satisfied on July 31, 2012.  Plaintiff pleads that the Westchester

County Clerk's office records satisfactions of mortgages expeditiously upon presentment.  Am.

Comp. ¶ 18.  It is more than plausible that Defendants failed to timely present a certificate for

recording, as evidenced by the fact that the satisfaction was recorded 136 days after the mortgage

was satisfied.  Am. Comp. ¶¶ 15-16.  Moreover, the county clerk is required by law to record

satisfactions of mortgages when they are presented.  N.Y. Real Property Law § 317 provides that

"[e]very instrument, entitled to be recorded, must be recorded by the recording officer in the

order and as of the time of its delivery."  As this Court noted, "it's enough for plausibility that . .

---

[28]  Defendants argue that the exclusion of mortgagees with only five loans proves that the legislature knew the statutes are burdensome.  Def. Mem. at 14.  But legislators regularly exclude small businesses from requirements that are *de minimus* burdens on large corporations; what might be a burden for a entrepreneurial investor dabbling in mortgage lending is of no consequence to larger lending institutions (assuming they make the minimal effort to comply with the law).

[29]  *See, e.g., Tamburri*, 875 F. Supp. 2d at 1020-1021 ("Defendant essentially asks the Court to eviscerate decades of state foreclosure regulation.  The Court finds no authority to do so."); *Gerber*, 2012 WL 413997, at *8 ("This would bring down the Deed of Trust Act and probably every state's laws regarding foreclosure.  Reaching such a momentous conclusion would indeed require a showing that it was 'the clear and manifest purpose of Congress.'").

. the County Clerk properly records, and this wasn't recorded for months after the date it should have been recorded."  Transcript at 8:11-20.

**V.      § 275 Is Applicable To Wells Fargo.**

Wells Fargo contends that it was not the holder of Plaintiff's mortgage, and only a holder is a mortgagee under § 275.  Def. Mem. at p. 17.  However, given that § 1921 and § 275 address the exact same issue and that they were amended at the same time, it stands to reason that the definition of "mortgagee" in § 1921 is applicable to § 275.  In fact, § 1921 specifically states that "[d]elivery of a satisfaction of mortgage in accordance with the terms of section two hundred seventy-five of the real property law shall be deemed to satisfy the requirements of this section regarding the satisfaction of mortgage."  Therefore, the definition of "mortgagee" in § 1921 is applicable to § 275.  Moreover, the more expansive definition is also consistent with the purpose of § 275, which is to encourage timely presentment by the entities responsible for doing so.

## <u>CONCLUSION</u>

§ 1921 and § 275, simple reporting requirements with penalties for recalcitrant mortgagees, are crucial mechanisms for the protection of the orderly acquisition and transfer of property in New York State.  Defendants' motion to dismiss should be summarily denied.

Dated:      June 2, 2014
            White Plains, New York              **FINKELSTEIN, BLANKINSHIP,**
                                                **FREI-PEARSON & GARBER, LLP**

                                        By:     _/s/ D. Greg Blankinship_
                                                D. Greg Blankinship
                                                Jeremiah Frei-Pearson
                                                Todd S. Garber
                                                Shin Y. Hahn
                                                1311 Mamaroneck Avenue
                                                White Plains, New York 10605
                                                Tel: (914) 298-3281
                                                gblankinship@fbfglaw.com
                                                jfrei-Pearson@fbfglaw.com
                                                tgarber@fbfglaw.com
                                                shahn@fbfglaw.com

                                                _Attorneys for Plaintiff and the putative class_